UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LEROY SAMPY, JR.** | **DOCKET NO. 6:23-cv-0686**<br>**SECTION P** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **UNKNOWN DEFENDANTS, ET AL** | **MAGISTRATE JUDGE AYO** |

### REPORT AND RECOMMENDATION

Before the court are the original and amended civil rights complaints filed pursuant to 42 U.S.C. § 1983, by plaintiff Leroy Sampy, Jr., who is proceeding *pro se* and *in forma pauperis* in this matter. (Rec. Docs. 5, 8, 9, 11, 14). At the time of filing, Sampy was incarcerated at the Lafayette Parish Correctional Center (LPCC). He is currently housed at the River Bend Detention Center in Lake Providence, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### I.    BACKGROUND

Sampy alleges that on June 21, 2022, LPCC officials failed to protect him from being jumped by inmates. Rec. Doc. 5, p. 3. Specifically, he alleges that on the day of the incident, he was told by inmate to "pack my things and get out of the dorm or I would be jumped." Rec. Doc. 8, p. 3. He states that he notified Jonathan Lundy, Darry Johnson, Lt. Martin and Sgt. Plaisance of the threats that day, yet they ignored his requests for protection. *Id.* He was subsequently jumped, sustaining several injuries.

Following the incident, he was taken to the hospital and given prescription medication for the pain. Doc. 8, p. 4. However, he contends that despite the fact that he is still being

given medication, he requires "better pain medication and see a specialist for ankle and shoulder." *Id*.

He also asserts that he is still in pain and in need of additional dental work, an M.R.I. and additional medical treatment. Rec. Doc. 5, p. 4. He also complains that he has been denied mental health care. Rec. Doc. 14. However, he concedes that he was seen by a counselor and got some feedback from her, but she had an "attitude" with him. *Id*. at p. 4. He also asserts that he needs "something to help me sleep and to help me with my bad anxiety." *Id*.

In an Amended Complaint filed on July 31, 2023, Sampy raises additional, unrelated claims. He contends that on July 15, 2023, a shakedown was conducted in his dorm and his personal property was taken from him. Rec. Doc. 9. He states that he has "written for a Bible but was told I can't receive it because of security reasons." *Id*. He complains that Lieutenant Vidrine told him to "look at TV/watch it on live stream." *Id*. In another Amended Complaint, also filed on July 31, 2023, he provides the Court with a written copy of a response to his grievance regarding the Bible in which "facility staff" informed him that he would "need to write to the Chaplain and she will issue you a new Bible." Rec. Doc. 14, p. 4.

He further elaborates on this July 15, 2023 shakedown, alleging that the search was a violation of the Fourth Amendment "right of the people to be secured in there [sic] persons, houses, papers and effects against unreasonable searches and seizures." Rec. Doc. 11, p. 1. During that search, authorized by Warden Paula Smith, Captain Jared Yashar, Lt. Idella Williams and Detective Tenney, legal documents and mail were also taken from him. *Id*. at p. 2.

Finally, Sampy complains that the grievance procedure at LPCC is ineffective. Rec. Doc. 11, p. 1.

2

## II.   LAW AND ANALYSIS

### A. Frivolity Review

Sampy has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept the plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (failure to state a claim).

### B. Frivolous Claims

#### a. *Denial of Medical Care*

Sampy complains that he has been denied medical care following injuries incurred after a physical altercation involving other inmates. He was told by medical staff that he had a broken shoulder and, after almost a year, he is still suffering from back pain and missing a tooth. Rec. Doc. 5, p. 3. In response to this Court's order to provide more details regarding his claims (Rec. Doc. 7), he clarified that he was taken to the hospital after the incident, given prescription medication for the pain and, as of that date, was still taking medication. However, he contends that he is seeking "better pain medication and see a specialist for ankle

3

and shoulder." Rec. Doc. 8, p. 4. He also states that he had five teeth pulled because they were broken as a result of the attack and that there is a fragment of bone under his left eye that is not attached to his face. *Id.*

As a detainee, Sampy's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The standard to apply in analyzing a denial of medical care claim asserted by a pretrial detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996)). Sampy's complaint is directed to episodic acts or omissions. Under the "episodic act" standard, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." Thus, the plaintiff must show both that he suffered a sufficiently serious deprivation and that this deprivation was brought about by the deliberate indifference of prison officials. *Hare*, 74 F.3d at 643 and 650.

This is the same standard applicable to convicted prisoners whose claims are analyzed under the Eighth Amendment. In order to prevail on such claims, convicts must establish that the delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

4

disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citation omitted).

In this case, Sampy's own admissions regarding his medical treatment contradict his allegations of deliberate indifference. It is evident that Sampy's medical complaints were not ignored. On the contrary, he was treated following the incident and beyond for both his physical and mental health. His belief that he should be given "better" pain medication and given anxiety medication is of no moment. An inmate has no right to be prescribed a particular medication for pain, and the fact that he disagrees with the prison medical staff concerning which pain medication is appropriate is not actionable under Section 1983. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Williams v. Chief of Medical Operations, Tarrant County Jail*, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994) (a refusal to provide an inmate with the specific pain killers he requests does not rise to the level of a constitutional violation); *Billizone v. Jefferson Parish Correctional Ctr.*, 2014 WL 7139636, at *4 (E.D. La. Dec. 15, 2014); *Jacobs v. McVea,* 2014 WL 2894286, at *7 (E.D. La. June 25, 2014). This is true even if the medication chosen by a prison doctor is not as effective as an alternative the prisoner would prefer, because the fact that a prisoner's medical care "may not have been the best money could buy" is insufficient to establish a federal violation. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978). Moreover, where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. *Gobert*, 463 F.3d at 346; *Williams*, 1994 WL 733493, at *2; *Kron v. Tanner*, 2010 WL 3199854, at *7 (E.D .La. May 19, 2010), *adopted by*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Further, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107, (1976). Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges. Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *Castro v. Louisiana,* 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis whatsoever to engage in such second-guessing here.

In summary, the determinative issue before the Court is not whether Sampy's medical treatment was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need which was met with deliberate indifference. He did not. Accordingly, his medical claims are subject to dismissal because they are legally frivolous.

### b. *Grievance System*

Sampy contends that the grievance procedure at LPCC is ineffective (Rec. Doc. 11, p. 1) and accused Detective Tenney of claiming his grievances were false (Rec. Doc. 8, p. 1). Sampy's complaints regarding the grievance procedure or grievance investigation fail to state a claim. An inmate has no constitutional right to an adequate and effective grievance procedure. *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006) (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)). The Constitution also does not create a federally protected liberty interest for prisoners to have their grievances investigated or resolved to

6

their satisfaction. *See Minix v. Stoker*, 289 F. App'x 15, 17 (5th Cir. 2008); *Geiger*, 404 F.3d at 373-74.

Any alleged due process violation arising from an "alleged failure to investigate [prisoner] grievances is indisputably meritless." *Geiger*, 404 F.3d at 374; *see also Taylor v. Cockrell*, 92 F. App'x 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated [the prisoner's] constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim.").

### c. *Illegal Search*

To the extent Sampy alleges that Defendants violated his constitutional privacy rights during the July 15, 2023 cell search, his claim fails as prisoners do not have an expectation of privacy in their cells, which prison officials may search at any time. *Hudson v. Palmer*, 468 U.S. 517, 528-29 (1984). The Fifth Circuit has described the *Hudson* holding as a "per se" and "bright line rule" that the Fourth Amendment does not apply to jail cells. *United States v. Ward*, 561 F.3d 414, 417 & 419 (5th Cir. 2009) (finding that under *Hudson* a prison escapee could not invoke the Fourth Amendment to suppress evidence obtained from a warrantless search of his motel room and bag); *see also United States v. Guerrero*, 2011 WL 13114250, at *2 (W.D. Tex. Jun. 27, 2011) (recognizing *Hudson* as establishing a "bright line rule" that the Fourth Amendment does not apply to prison cells); *United States v. Melancon*, 2010 WL 324007, at *31 (E.D. La. Jan. 21, 2010) (expanding *Hudson* to find that a prisoner did not have an expectation of privacy in the prison visitation room); *United States v. Owens*, 2009 WL 3379110, at *2 (W.D. La. Oct. 19, 2009) (recognizing that *Hudson* established "as a per se rule [that] a prisoner cannot invoke the Fourth Amendment" concerning a search of his prison cell).

7

### d. Stolen Personal Property

Sampy complains that the search of his dorm that took place on July 15, 2023 and the subsequent taking of his personal property violated his constitutional rights. The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. However, the jurisprudence makes it clear that a prisoner's claim for random deprivation of personal property is not cognizable under Section 1983.

In *Parratt v. Taylor,* 451 U.S. 527, 544 (1981), a prisoner claimed that prison officials negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.* at 536-37. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court extended that holding to intentional deprivations of property. In *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986), the Supreme Court overruled *Parratt* in part, holding that merely negligent deprivations of property simply do not implicate constitutional protections at all.

Thus, there is simply no constitutional protection for the fact that Sampy's personal property was taken by prison officers. Louisiana law provides him the opportunity to seek redress in state court, which is all the process Sampy is due. *See* La. Civ. Code art. 2315.

### e. Stolen Legal Mail/Documents

In addition to his claims regarding his personal items and effects, Sampy further alleges that much of his legal mail and legal papers were taken during the July 15 search. He asserts that without the documents, he is unable to prepare for his upcoming criminal trial. The Court liberally construes this claim regarding the loss of Sampy's legal documents to be a claim of denial of access to the courts.

Prisoners have a constitutionally recognized right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, the right of access to the courts is not a "freestanding right." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). The Supreme Court has stated that the right encompasses no more than the ability of a prisoner to prepare and transmit a necessary legal document to the court. *Clewis v. Hirsch*, 700 Fed. App'x 347, 348 (5th Cir. 2017) (citing *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (internal quotations and footnote omitted)). The Fifth Circuit has explained that this right "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

In order to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356. However, the "injury requirement is not satisfied by just any type of frustrated legal claim." *Id*. at 353. A plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action. *Id*. at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). In making this showing, a plaintiff must allege that he suffered an actual injury resulting from the alleged denial of access. *Id*. at 349. The required showing of actual injury requires a plaintiff to allege, at a minimum, that his ability to pursue a "nonfrivolous, arguable" claim was hindered. *See Christopher v. Harbury,* 536 U.S. 403, 415, (2002) (citing *Lewis*, 518 U.S. at 353)). Sampy has failed to make such showing.

Moreover, Sampy has represented to the Court that he has an attorney representing him in his state court proceedings. *See* Rec. Doc. 12. "A criminal defendant cannot complain

9

that he was denied access to the courts while represented by counsel." *Ashcraft v. Cameron County,* 1998 WL 611201, at *3 (5th Cir. Aug. 17, 1998); *see also Ford v. Foti,* 52 F.3d 1068, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal action pending against him."); *Childs v. Scott*, 51 F.3d 1043, 1995 WL 153057, at *1 (5th Cir. Mar. 22, 1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access to the courts."); *Webb v. Havins,* 26 F.3d 1118, 1994 WL 286151, at *3 (5th Cir. June 13, 1994); *Crockett v. Carpenter*, 20 F.3d 1169, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994)).

Therefore, to the extent that Sampy is asserting a claim that he has been denied access to the courts, that claim should be dismissed as frivolous.

### f. *Religious Claims*

Sampy alleges that he was told he could not receive a new Bible after his was picked up during the July 15, 2023, search because of "security reasons." However, he later concedes that in response to his grievance regarding the Bible, he was informed that he could request a new one from the Chaplain. Rec. Doc. 14, p. 4. Moreover, he has access to religious services via live stream. *See* Rec. Doc. 9, p. 1. Accordingly, he has not alleged a claim that his right to practice his religion has been violated.

### C. Improper Defendants

#### a. *Lafayette Parish Correctional Center*

Sampy has named the Lafayette Parish Correctional Center (LPCC) as a defendant. However, Federal Rule of Civil Procedure 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether LPCC has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This

term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE ANN. art. 24.

LPCC is not an entity capable of being sued. LPCC is a parish corrections facility operated by the Sheriff of Lafayette Parish. *Piearson v. Corr. Ctr. Lafayette Parish*, 2006 WL 4012476 (citing La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; *Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2 Cir. 1991) (citing La. R.S. § 15:702 and noting that a parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons and that the administration of such jails is within the sheriff's province to insure that prisoners are properly cared for, fed and clothed) Accordingly, Sampy's claims against this non-juridical entity are frivolous and dismissal on that basis is recommended.

### b. *Lafayette Parish Sheriff*

In addition, Sampy's claims against the Sheriff of Lafayette Parish should be dismissed. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992), *cert. denied*, 508 U.S. 951 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994), *cert. denied*, 514 U.S. 1107 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897 (1983). Sampy failed to allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by this defendant and as such, claims against him should be dismissed.

### III. CONCLUSION

Therefore,

**IT IS RECOMMENDED** that the claims addressed above be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**IT IS FURTHER RECOMMENDED** that all claims against the following defendants be **DISMISSED WITH PREJUDICE**: (1) Unknown Defendants, (2) Medical, (3) Sheriff of Lafayette, (4) Detective Tenney, (5) Paula Smith, (6) Lt. Vidrine, (7) Jared Yashar, (8) Idella Williams, and (9) Lafayette Parish Correctional Center.

The failure to protect claim brought against Jonathan Lundy, Darry Johnson, Lt. Martin, and Sgt. Plaisance will be addressed in a separate order.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

**THUS DONE AND SIGNED** in chambers this 14th day of July, 2025.

12

David J. Ayo
United States Magistrate Judge